## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**BOBBY A. CAGLE and MARY JANE CAGLE,**

>        **Plaintiffs,**

v.                                                    **Civil Action No. 3:13CV807**

**CITIMORTGAGE, INC.,**

>        **Defendant.**

### MEMORANDUM OPINION

Before the Court is the Motion for Leave to File Second Amended Complaint[1] ("Motion to Amend") filed by Plaintiffs Bobby A. Cagle and Mary Jane Cagle ("the Cagles"). (ECF No. 30.) Defendant CitiMortgage, Inc. ("CitiMortgage") opposes amendment on the grounds of futility. (ECF No. 35.) On February 12, 2015, the Court heard oral argument. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[2] For the reasons that follow, the Court will deny the Cagles' Motion to Amend.

The proposed Revised Second Amended Complaint alleges four counts: (1) Count I: fraud; (2) Count II: constructive fraud (in the alternative); (3) Count III: breach of the implied duty of good faith and fair dealing; and, (4) Count IV: breach of the Uniform Commercial Code ("UCC") duty of good faith and fair dealing. (Mot. Amend Ex. 1 ("Revised Second. Am. Compl.") 1, 13, 15, 17, ECF No. 30-1.) In this case, the proposed claims would not survive motion to dismiss scrutiny, making amendment futile.

---

[1] Although Plaintiffs sought leave to file a Second Amended Complaint (ECF. No. 30), this would be a Revised Second Amended Complaint. As the procedural history indicates, the Plaintiffs have placed three previous proposed complaints before this Court.

[2] The parties are diverse and the amount in controversy exceeds $ 75,000. *See* 18 U.S.C. § 1332.

## I.  Standard of Review

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court of the United States instructs courts to heed this mandate and freely allow amendments in the absence of considerations such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)) ("The law is well settled 'that leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'"). A district court may deny leave to amend when the proposed amended complaint fails to satisfy the requirements of the Federal Rules of Civil Procedure because the amendment would not survive a motion to dismiss, rendering any attempt to amend futile. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

In considering a motion to dismiss for failure to state a claim, the "motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his [or her] claim entitling him [or her] to relief." *Edwards*, 178 F.3d at 244 (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

2

The Federal Rules of Civil Procedure "require [ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* These allegations have facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Tobey v. Jones*, 706 F.3d 379, 386 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002)).

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190

F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

The Cagles attach several documents to their proposed Revised Second Amended Complaint.[3] Neither party contests the authenticity of these documents and the Plaintiffs refer to them in the proposed complaint. Deeming them central to the claims, the Court will consider these documents. *See Witthohn*, 164 F. App'x at 396–97 (citations omitted).

## II. Procedural and Factual Background

### A.   Procedural Background and Complaints Filed

This Court currently reviews the fourth complaint, a proposed Revised Second Amended Complaint, which Plaintiffs have placed before the Court. On December 4, 2013, the Cagles filed their first complaint ("First Complaint") against CitiMortgage alleging fraud (Count I), breaches of the Deed of Trust (Counts II and III), and breach of the implied covenant of good faith and fair dealing (Count IV). (Compl. 3–18, ECF No. 1.) CitiMortgage moved to dismiss all the claims in the First Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 4.) On March 12, 2014, the district court, the Honorable Robert E. Payne, heard oral argument on the motion to dismiss and granted the motion. (ECF No. 17.) On March 13, 2014, the district court

---

[3] The Cagles attached six exhibits to the Revised Second Amended Complaint. The identifying stickers on the exhibits do not match the identifying labels on the exhibit cover pages. For example, the Deed of Trust contains a cover page identifying it as Exhibit B, but the exhibit sticker on the document labels it Exhibit A. (*See* Revised Am. Compl. Ex. B.)

For ease of reference, the Court refers to the six exhibits according to cover page designation: (1) Ex. A: the promissory note ("Note"); (2) Ex. B: the Deed of Trust; (3) Ex. C: the April 13, 2011 Consent Order and Stipulation entered into between the Comptroller of the Currency of the United States and CitiBank, N.A. ("2011 Consent Order"); (4) Ex. D: the Deed of Appointment of Substitute Trustees stating that it "is an attempt to collect a debt"; (5) Ex. E: a letter dated December 13, 2011 to Bobby Cagle regarding a loan modification program informing the Cagles that if they are removed from the program, they "will be required to pay [their] full mortgage payment and all past due amounts" ("December 2011 Letter"); and, (6) Ex. F: the January 4, 2012 email to Bobby Cagle from CitiMortgage regarding the foreclosure sale ("January 4, 2012 Email").

dismissed all four counts in the First Complaint but granted the Cagles leave to file an amended

complaint with respect to the fraud and breach of the covenant of good faith and fair dealing

claims.[4]  (O. Mar. 13, 2014, ECF No. 19.)

On March 25, 2014, the Cagles filed an amended complaint ("the Second Complaint").

(ECF No. 20.)  On April 15, 2014, CitiMortgage moved for the second time to dismiss for failure

to state a claim.[5]  (ECF No. 21.)  Without seeking a ruling on the motion to dismiss the Second

Complaint, the Cagles filed a motion for leave to file a Second Amended Complaint ("the Third

Complaint") on August 27, 2014.[6]  (ECF No. 28.)

---

[4] The district court did not issue a memorandum opinion with respect to the first motion to dismiss.  The March 13, 2014 Order granted the motion to dismiss with leave to file an amended complaint regarding "the claims asserted in Counts I [fraud] and IV [breach of the implied covenant of good faith and fair dealing] and a constructive fraud claim if counsel considers one appropriate." (O. Mar. 13, 2014, ECF No. 19.)  The district court did not grant leave to amend Counts II or III (breaches of the Deed of Trust). (*Id.*)

[5] On May 28, 2014, after previously extending the Cagles' deadline to file a response to the second motion to dismiss (ECF No. 24), the district court referred the second motion to dismiss regarding the Second Complaint to the undersigned for a report and recommendation. (ECF No. 27.)  On September 16, 2014, the district court reassigned this matter to the undersigned to preside over as a United States District Judge. (ECF No. 32.)

[6] The Third Complaint included a fifth claim for breach of the "applicable law" provision of the Deed of Trust based on CitiMortgage's failure to comply with the 2011 Consent Order appended to that Third Complaint. (Mot. Leave File Second Am. Compl. Ex. 1 Third Compl. ¶ 21, ECF No. 28-1; *id.* Ex. C, ECF No. 28-1.)  In that 2011 Consent Order, Citibank and its subsidiaries agreed not to foreclose on any home until after it provided a borrower otherwise facing foreclosure with a written response to any pending application for loan modification. (*Id.* ¶¶ 78–79.)
  The Cagles seek leave to file this fourth complaint, which they label a Second Amended Complaint and the Court calls the Revised Second Amended Complaint, by removing the Third Complaint's last count based on the 2011 Consent Order. (*See* Mot. Amend 1 ("[T]he revised proposed second amended complaint does not include[ ] what would have been a fifth count . . . that accompanied the Cagles' prior [motion to amend].").)  The Cagles correctly concede that the 2011 Consent Order cannot give rise to a cause of action because the 2004 Deed of Trust's "applicable law" provision incorporates only law existing when the parties entered into the deed of trust. (Mem. Supp. Pls.' Mot. Amend ("Pls.' Mem. Supp.") 2, ECF. No. 31.)  *See also Condel v. Bank of Am., N.A.,* No. 3:12cv212-HEH, 2012 WL 2673167, at *8 (E.D. Va. Jul. 5, 2012)

On September 7, 2014, the Cagles filed their instant Motion to Amend the complaint – a fourth attempt – alleging two fraud counts and two counts based on the covenant of good faith and fair dealing. (*See generally* Revised Second Am. Compl., ECF No. 30-1.)  By order entered October 2, 2014, this Court denied as moot CitiMortgage's second motion to dismiss (ECF No. 21) and the Cagles' motion for leave to file the Third Complaint (ECF No. 28).  (ECF No. 34.)  The October 2, 2014 Order directed CitiMortgage to respond to the Motion to Amend regarding this Revised Second Amended Complaint.  (*Id.*)

CitiMortgage filed its opposition to the Revised Second Amended Complaint, and the Cagles have replied. (ECF Nos. 35–36.)  The Court heard oral argument.  The Cagles submitted documents after argument (ECF No. 38), and this Court has considered relevant submissions. The matter is ripe for disposition.

**B.    Summary of Allegations in the Revised Second Amended Complaint[7]**

On March 12, 2004, Bobby Cagle entered into a mortgage loan with lender ABN AMRO Mortgage Group.  A Note signed by Bobby A. Cagle and secured by a Deed of Trust signed by the Cagles evinced the loan.  The Deed of Trust appointed Millennium Title Services, LLC as Trustee.  CitiMortgage succeeded to the rights of the Note.  In 2011, the Cagles faced foreclosure of their home.  The Cagles consulted and retained a bankruptcy lawyer and filed for Chapter 13

---

(finding "applicable law" in deed of trust "refers to then-existing body of law that applies directly to the contract in question, or to which the parties are otherwise subject in the performance of their contractual duties and obligations").

In this case, the Cagles entered into the Deed of Trust and Note on March 12, 2004, seven years before the April 2011 Consent Order, so the "applicable law" provision does not pertain. In any event, the March 13, 2014 Order did not grant Plaintiffs any right to amend their Deed of Trust claims.

[7] For purposes of this motion, the Court assumes the well-pleaded factual allegations in the Revised Second Amended Complaint to be true and views them in the light most favorable the Cagles. *See Edwards*, 178 F.3d at 244.

bankruptcy. Filing the Chapter 13 bankruptcy "had the effect of stopping a foreclosure of the home which was imminent." (Revised Second Am. Compl. ¶ 9.) The Cagles converted their Chapter 13 bankruptcy into a Chapter 7 bankruptcy and obtained a discharge of Bobby Cagle's obligation on the Note.

After successfully averting their first foreclosure through the bankruptcy procedure, the Cagles sought a loan modification to help prevent foreclosure through the Home Affordable Modification Program ("HAMP"), a sub-program of the Making Home Affordable Program authorized by the Secretary of the Treasury and the Director of the Federal Housing Finance Agency. The federally funded HAMP program incentivizes participating servicers to enter into agreements with struggling homeowners in order to make the monthly mortgage payments more affordable.[8]

The Cagles contend they sought a loan modification pursuant to HAMP from CitiMortgage for a considerable period.[9] However, instead of securing a modification, the Substitute Trustee under the Deed of Trust, on January 4, 2012, advertised the home for sale and scheduled the second foreclosure sale of their home for January 5, 2012. On January 4, 2012 at 6:55 p.m., the evening before the foreclosure sale scheduled for the next day, the Cagles received

---

[8] The Plaintiffs next set forth allegations about the existence of the 2011 Consent Order. The Court cannot discern why the Cagles include allegations about the 2011 Consent Order when they have specifically abandoned any claim based upon it. *See supra* note 6. Plaintiffs nonetheless allege that the parent company to CitiMortgage entered into the April 2011 Consent Order. The 2011 Consent Order itself plainly indicates that "[n]othing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order." (Revised Second Am. Compl. Ex. C.)

[9] The Revised Second Amended Complaint does not detail how long the Cagles sought a loan modification. The December 2011 Letter appended to the Revised Second Amended Complaint instructs Bobby Cagle to submit certain HAMP documentation no later than January 16, 2012.

an email from a CitiMortgage representative. This representative stated, "I have received docs via email – in process of uploading into file system and requesting pp of sale." (Revised Second Am. Compl. ¶ 27; *id.* Ex. F.) The Cagles assert that CitiMortgage's representative "was not, at that time, in fact requesting a postponement of the sale and did not, in fact, request a postponement of the foreclosure sale scheduled for the next day." (*Id.* ¶ 28.) The Cagles aver that the representative did not intend to request a postponement of the sale and instead made such an assurance with the intent to mislead. On January 5, 2012, the Substitute Trustee conducted the foreclosure sale as scheduled. CitiMortgage made the highest bid.

CitiMortgage assigned its high bid to the Federal Home Loan Mortgage Corporation ("Freddie Mac"), which backed the loan. The Substitute Trustee executed a Trustee's Deed and transferred title of the Cagles' home to Freddie Mac. Freddie Mac then instituted an unlawful detainer action against the Cagles in the General District Court of the County of Henrico, Virginia ("the GDC"). The GDC awarded possession of the Cagles' home to Freddie Mac. The Cagles appealed the GDC order to the Circuit Court for the County of Henrico, Virginia ("the Circuit Court"), and the Circuit Court awarded possession to Freddie Mac. On June 17, 2013, Freddie Mac evicted the Cagles from their home.

### III. Analysis

At base, the Cagles contend that a CitiMortgage email saying the author from CitiMortgage was "requesting pp of sale" at 6:55 p.m. the night before the foreclosure fraudulently caused them to believe that CitiMortgage had cancelled the sale. The Cagles claim that the January 4, 2012 Email fraudulently prevented them from re-hiring an attorney with whom they had previously worked and who knew how to stop foreclosures. They allege their attorney would have stopped the sale scheduled to occur at 10:00 the next morning.

8

With respect to Counts I and II, CitiMortgage maintains that the Revised Second Amended Complaint fails to state a plausible cause of action for actual or constructive fraud because no causal connection exists between the alleged fraud and the damage the Cagles suffered. CitiMortgage contends that the Cagles' claim involves layers of speculation too implausible to sustain a motion dismiss: an overnight creation and filing of documents based on refuted legal theories would not plausibly stop the next morning's foreclosure, even via an experienced attorney. Without this causal connection, "Plaintiffs could not have relied to their detriment" on any alleged misrepresentation. (Def.'s Mem. Opp'n Pls.' Mot. Amend ("Def.'s Opp'n Br.") 5, ECF No. 35.) Regarding Counts III and IV, CitiMortgage contends the Note and the Deed of Trust failed to create an "express duty on the part of Citi[Mortgage] to delay a foreclosure based upon the pendency of a loan modification[ ]." (*Id.* at 9.) CitiMortgage cites precedent from courts in this district that "the duty of good faith and fair dealing does not extend to the review and processing of loan modifications, absent an express provision indicating otherwise." (*Id.*)

Because the claims in the Revised Second Amended Complaint would not survive Fed. R. Civ. P. 12(b)(6) scrutiny, the Court will deny the Cagles' Motion to Amend. The Revised Second Amended Complaint does not contain plausible allegations permitting this Court to reasonably infer that CitiMortgage is liable to the Cagles for the damages they allegedly suffered. The Cagles contend that an email "requesting" postponement fraudulently caused them to believe that CitiMortgage had cancelled the foreclosure. That contention likely fails as a matter of law. However, even presuming Plaintiffs' allegations to be true, the Cagles cannot sustain a claim that the lawyer, overnight, could have successfully used legal theories rejected by this Court to prevent the foreclosure. Instead, any damages suffered flowed directly from a

lawfully executed foreclosure and not detrimental reliance on the January 4, 2012 Email as alleged. As such, amendment would be futile, and this Court will deny Plaintiffs' Motion to Amend. (ECF No. 30.)

A. **The Cagles Do Not Plausibly Allege Actual Fraud or Constructive Fraud Because Any Damages Suffered Stem from the Exercise of Foreclosure Rights Articulated in the Deed of Trust and Note and the Legal Bases They Say Counsel Would Have Used to Challenge the Foreclosure Sale Fail as a Matter of Law**

1. **Standard of Review for a Claim of Actual Fraud (Count I) and Constructive Fraud (Count II)**

Under Virginia law, a claim for actual fraud requires: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, [and] (5) reliance by the party misled, . . . (6) resulting [in] damage to [that] party." *Bennett v. Bank of Am., N.A.*, No. 3:12cv34-HEH, 2012 WL 1354546, at *6 (E.D. Va. Apr. 18, 2012) (alterations and omissions in original) (quoting *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005)). In Virginia, "the elements of a claim for constructive fraud are the same as for an action for actual fraud, but the plaintiff need only 'plead that the false representation was made innocently or negligently.'" *Belote v. Bank of Am., N.A.*, No. 3:12cv526-HEH, 2012 WL 6608973, at *6 (E.D. Va. Dec. 18, 2012) (quoting *Sales v. Kecoughtan Hous. Co.*, 690 S.E.2d 91, 94 (Va. 2010)). A promise of future action will never support a claim of constructive fraud under Virginia law. *Id.* (citation omitted). "'If unfulfilled promises, innocently or negligently made, were sufficient to support a constructive fraud claim, every breach of contract would potentially give rise to a claim of constructive fraud.'" *Id.* (quoting *SuperValu, Inc. v. Johnson*, 666 S.E.2d 335, 342 (Va. 2008)).

Additionally, Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). These

circumstances are the "'time, place[,] and contents of the false representation, as well as the identity of the person making the misrepresentation and what he [or she] obtained thereby.'" *Bennett*, 2012 WL 1354546, at *7 (quoting *Kellogg Brown & Root, Inc.*, 525 F.3d at 379).

> 2. **The Cagles' Actual (Count I) and Constructive Fraud (Count II) Claims Would Not Survive Motion to Dismiss Scrutiny, Meaning Amendment Would Be Futile**

CitiMortgage alleges that Plaintiffs fail to establish detrimental reliance, an element of both actual and constructive fraud. *See Belote*, 2012 WL 6608973, at *5–6; *Bennett*, 2012 WL 1354546, at *6. As discussed below, because the Cagles fail to plausibly allege detrimental reliance, the Court will DENY the Motion to Amend as to Counts I and II under that reasoning.[10]

---

[10] Although CitiMortgage does not raise this issue, the Court notes that the Cagles likely fail to meet the heightened pleading standards for stating a fraud claim. The allegation that a CitiMortgage employee sent an email saying she had received documents and was *requesting* a postponement of the foreclosure seems to fall short of the heightened pleading standards for the misrepresentation of a present fact giving rise to an actual fraud claim.

First, nothing in the January 4, 2012 Email promises that the foreclosure will be stopped. The email states that a request will be made. Second, even presuming, as alleged, that the CitiMortgage representative had no intention of forestalling the foreclosure, cases allowing an actual fraud claim to proceed generally have done so when the lender has made an unconditional representation that a specific act by the mortgagee *will stop the foreclosure. See, e.g., Belote*, 2012 WL 6608973, at *6 (denying the motion to dismiss an actual fraud claim based on the bank's statement "assur[ing]" the homeowners that if they sent certain documents the bank "would cancel the foreclosure sale"); *Matanic v. Wells Fargo Bank, N.A.*, No. 3:12cv474-HEH, 2012 WL 4321634, at *6 (E.D. Va. Sept. 19, 2012) (denying the motion to dismiss the actual fraud claim when the bank representative stated the bank would "stop the foreclosure" if the plaintiff transmitted certain tax information, which the plaintiff sent); *Albayero v. Wells Fargo Bank, N.A.*, No. 3:11cv201-HEH, 2011 WL 4748341, at *5 (E.D. Va. Oct. 5, 2011) (denying the motion to dismiss an actual fraud claim based on a statement that a home "would be taken out of foreclosure" if homeowners paid $8,000 to the bank, which the homeowners paid); *Washington v. CitiMortg., Inc.*, No. 3:10cv887-JAG, 2011 WL 1871228, at *10 (E.D. Va. May 16, 2011) (denying the motion to dismiss an actual fraud claim when the lawyer for the substitute trustee and bank told homeowner that the foreclosure sale "would be postponed" when she obtained a hardship letter to access retirement funds and she did so). No such allegation of an absolute promise not to foreclose exists in this case.

Finally, as to constructive fraud, to the extent the January 4, 2012 Email constitutes a promise, it is a promise of future action that likely cannot "support a claim of constructive fraud." *Belote*, 2012 WL 6608973, at *6.

In sum, the Cagles do not plausibly allege "that absent [CitiMortgage's] representation they would have been able to prevent their home from being foreclosed." *Cormier v. Atl. Law Grp.*, No. 3:12cv178-JRS, 2012 WL 3249647, at *4 (E.D. Va. Aug. 7, 2012). Even drawing inferences in favor of the Cagles, this Court cannot find that CitiMortgage lacked the right to foreclose on the Cagles' home. The Cagles never dispute that the Deed of Trust and Note provided CitiMortgage with the right to foreclose. Therefore, they cannot plausibly allege that the injury they suffered resulted from their reliance on CitiMortgage's representation in the January 4, 2012 Email, rather than CitiMortgage's lawful exercise of its authority to foreclose. Moreover, the proffered bases to prevent the foreclosure sale fail as a matter of law.

> **a.  Any Damages Suffered by the Cagles Stemmed from Foreclosure Rights Articulated in the Deed of Trust and Note, Not the January 4, 2012 Email**

Virginia law states that "[a]fter default, . . . [a] secured party "may reduce a claim to judgment, foreclose, or otherwise enforce the . . . security interest . . . by any available judicial procedure.'" Va. Code Ann. § 8.9A-601(a)(1) (West 2015). In this case, CitiMortgage did nothing more than exercise its rights provided in the loan documents and under the applicable law while attempting to cooperate with the Cagles. *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 386 (Va. 1996) (holding a defendant bank not liable for breach of the implied covenant of good faith and fair dealing when the bank exercised its contractual powers and filed for judgment against a debtor business instead of allowing the debtor business to sell dated inventory).

The Revised Second Amended Complaint contains carefully pled allegations that "[i]n 2011, the Cagles faced a foreclosure of [their] home" and that CitiMortgage instructed the Substitute Trustee to schedule a second foreclosure sale to occur on January 5, 2012. (Revised

Second Am. Compl. ¶¶ 9, 24, 26.) The complaint at bar does not explicitly allege that the Cagles defaulted on their mortgage obligations. However, even reading all allegations in favor of the Cagles, this Court finds that the Revised Second Amended Complaint contains factual allegations that can only support the plausible inference that the Cagles defaulted on their mortgage obligations.[11] Also, the Cagles never contend that they were prepared or able to tender payment to CitiMortgage to prevent the foreclosure, that the Deed of Trust did not give CitiMortgage the right to foreclose, or that in foreclosing, CitiMortgage acted contrary to the valid rights created by the Deed of Trust.

Instead, Bobby Cagle asserts that, while negotiating a modification to his mortgage loan, he relied on the January 4, 2012 Email received from a CitiMortgage representative stating that the representative would request a postponement of the sale, scheduled for the next day. However, the January 4, 2012 Email does not falsely assure that the foreclosure sale would be postponed or cancelled.

The Cagles cannot establish reasonable reliance on CitiMortgage's alleged misrepresentation because the Revised Second Amended Complaint does not contain plausible

---

[11] First, the Revised Second Amended Complaint indicates that the Cagles faced foreclosure of their home on two separate occasions: once in 2011 and again in January 2012. Second, the Cagles retained a bankruptcy lawyer to represent them in their Chapter 13 bankruptcy proceeding, "which had the effect of stopping a foreclosure of the home which was imminent [in 2011]." (Revised Second Am. Compl. ¶ 9.) Third, the Cagles attach documents to their Revised Second Amended Complaint showing monetary amounts overdue to CitiMortgage. Exhibit D, the Deed of Appointment of Substitute Trustees, states that it is "an attempt to collect a debt." (*Id.* Ex. D.) Likewise, Exhibit E, the December 13, 2011 HAMP letter, warns the Cagles that failure to provide necessary information may result in their being "required to pay [their] full mortgage payment and all past due amounts." (*Id.* Ex. E.) Finally, Freddie Mac evicted the Cagles after the Circuit Court awarded it possession of the Cagles' home in June 2013—nearly six months before the Cagles filed the First Complaint in this Court.

These factual allegations cannot support a plausible inference or finding that the Cagles did not default on their mortgage obligations or that the Deed of Trust did not give CitiMortgage the right to foreclose in these circumstances. Indeed, during oral argument, counsel for the Cagles acknowledged that no question existed as to the Cagles owing back payments.

factual allegations to support a reasonable inference that CitiMortgage did not have the right to foreclose or that CitiMortgage promised not to foreclose. *Cormier*, 2012 WL 3249647, at *5. CitiMortgage, through the Deed of Trust and Note, possessed the authority to foreclose on the Cagles' home. The Cagles fail to sufficiently allege how their damages were specifically related to any representations made by CitiMortgage and not CitiMortgage's exercise of its right to foreclose. CitiMortgage made no express promise that the foreclosure would in fact be postponed. While CitiMortgage's representative stated she would *request* postponement of the foreclosure, neither CitiMortgage nor the Cagles ever followed up to confirm an actual postponement. Because CitiMortgage possessed the contractual right to foreclose, the damages the Cagles allegedly suffered are the natural result of CitiMortgage's exercise of that right. The Cagles do not allege CitiMortgage followed inadequate foreclosure procedures or did not give sufficient notice of the foreclosure.[12] CitiMortgage's lawful foreclosure, and not the Cagles' alleged reliance on the CitiMortgage email, caused their damages.

> **b.      The Cagles Fail to Allege Detrimental Reliance Because the Legal Bases They Say Counsel Would Have Used to Challenge the Foreclosure Sale Fail as a Matter of Law**

The Cagles cannot allege detrimental reliance on the January 4, 2012 Email because the proffered bases to challenge the foreclosure sale fail as a matter of law. The Cagles suggest two legal theories that their attorney would have used to cancel the foreclosure sale: (1) the

---

[12] Although the Deed of Trust and Note gave CitiMortgage the right to foreclose on the Cagles, CitiMortgage could not conduct the foreclosure sale in any manner in which it chose. The Deed of Trust and Note required CitiMortgage to take certain actions and follow certain procedures, including giving notice of foreclosure. Apart from the challenge to the Substitute Trustee appointment document discussed below, the Cagles do not challenge any other aspect of the foreclosure sale.

14

pendency of a HAMP loan modification; and, (2) the invalid appointment of a substitute trustee. Neither would have prevented a foreclosure sale.[13]

> **i.    A Violation of a HAMP Provision Does Not Create a Private Cause of Action So Any Attempt to Postpone the Foreclosure Sale on that Basis Would Fail**

As a matter of law, the existence of a pending HAMP application does not entitle a homeowner to the postponement or cancellation of a foreclosure sale. *Condel*, 2012 WL 2673167, at *6. The Cagles claim a provision in the 2004 Deed of Trust "limiting foreclosure compliance with 'applicable law'" incorporates federal HAMP Supplemental Directive No. 09-01.[14] (Revised Second Am. Compl. ¶ 31(A).) However, federal courts have repeatedly and resoundingly held that "a lender's violation of HAMP regulations does *not* create a private right of action for borrowers." *Condel*, 2012 WL 2673167, at *6; *see, e.g., Johnson v. Bank of Am. N.A.*, No. 4:12cv105-RAJ, 2012 WL 6052044, at *2 (E.D. Va. Dec. 5, 2012); *Correll v. Bank of Am., N.A.*, No. 2:11cv477-RAJ, 2012 WL 348594, at *4 (E.D. Va. Feb. 2, 2012); *McInnis v. BAC Home Loan Servicing, LP*, No. 2:11cv468-RAJ-TEM, 2012 WL 383590, at *3 (E.D. Va. Jan. 13, 2012); *Bourdelais v. J.P. Morgan Chase Bank, N.A.*, No. 3:10cv670-HEH, 2011 WL 1306311, at *3 (E.D. Va. Apr. 1, 2011) ("*Bourdelais I*"). Because no private right of action by a borrower

---

[13] In their reply and supplemental material, the Cagles place various state court decisions in this record that appear to allow invalid appointment of substitute trustee or HAMP loan modification claims to survive a demurrer. (*See* Pls.' Mem. in Reply to Opp'n Motion Amend ("Pls.' Reply") 13–15, ECF No. 36; *Id.* Exs. 1–12, ECF Nos. 36-1 through 36-12; Pls.' Supp'l Mem. Supp. Mot. Amend ("Pl.'s Supp'l Mem.") 1–3, ECF No. 38; *id.* Exs. A–L, ECF Nos. 38-1 through 38-12.) These cases do not persuade. First, the federal cases are unassailably clear and consistent on these two issues. More decisively, the Cagles provide Virginia Circuit Court (and no Supreme Court of Virginia) cases. No decision offers any analysis of law or facts that could lend persuasive reasoning for this Court to adopt.

[14] Issued in 2009 by the United States Treasury, HAMP Supplemental Directive No. 09-01 provides "that foreclosure cannot proceed while a HAMP loan modification is pending." (Revised Second Am. Compl. ¶ 31(A); *Condel*, 2012 WL 2673167, at *6.)

to enforce HAMP regulations exists, the Cagles' attorney could not use an alleged violation of a

HAMP regulation and the existence of the HAMP application to cancel or postpone the sale.

Therefore, as a matter of law, CitiMortgage's alleged violation of HAMP regulations fails to

qualify as a viable legal theory for the Cagles to postpone or prevent the foreclosure.

ii.    **The Cagles Lack Standing to Challenge the Appointment of a Substitute Trustee So Any Attempt to Postpone the Foreclosure Sale on that Basis Would Fail**

The Cagles next challenge the substitute trustee appointment, but they lack standing to

make such a challenge.[15]  The Cagles lack standing because they are not parties to the

assignment, nor are they the intended beneficiaries of the assignment. *See Bennett*, 2012 WL

1354546, at *7 (noting that "the validity of the assignment does not affect *whether* [a] [b]orrower

owes its obligations, but only *to whom* [a] [b]orrower is obligated" (alterations in original)

(citation omitted)); *Wolf*, 830 F. Supp. 2d at 161; *see also Jones v. Fulton Bank, N.A.*,

No. 3:13cv126-JRS, 2013 WL 3788428, at *6–7 (E.D. Va. July 18, 2013) (granting the motion to

dismiss when homeowner lacked standing to challenge appointment of substitute trustee because

homeowner's default meant plaintiff could not establish "causality," [the causal connection to

the injury of foreclosure] or "redressability," [that a new, properly appointed trustee could

address that injury differently]).  Because the Cagles lack standing to challenge the substitute

---

[15] The Cagles argue that the substitution of trustee document was invalid because: (1) CitiMortgage did not attach all of the pages together; and, (2) the signed page contained "no appointive language." (Revised Second Am. Compl. ¶ 23.)  The Cagles, however, do not "allege that the signature on the second page was forged or that the document taken as a whole misrepresented the intentions" of the parties. *Wolf v. Fed. Nat'l Mortg. Ass'n*, 830 F. Supp. 2d 153, 165 (W.D. Va. 2011), *aff'd*, 512 F. App'x 336 (4th Cir. 2013) (per curiam).  Because the separation of pages is the only factual component of the Cagles' claim, they fail to undermine the appointment. *Bennett*, 2012 WL 1354546, at *8.

trustee appointment, the argument that the Cagles could postpone the foreclosure sale by challenging the validity of the appointment of the substitute trustee fails.[16]

**B. The Cagles Do Not Plausibly Allege that CitiMortgage Breached the Implied Covenant of Good Faith and Fair Dealing Because the Duty Does Not Extend to Loan Modifications and Because CitiMortgage Had a Contractual Right to Foreclose on the Cagles' Loan**

**1. Standard to Evaluate a Breach of the Implied Covenant of Good Faith and Fair Dealing Under Virginia Law**

Contracts governed by Virginia law, including those governing mortgages such as a deed of trust, contain an implied covenant of good faith and fair dealing. *Covarrubias v. CitiMortgage, Inc.*, No. 3:14cv157-JAG, 2014 WL 6968035, at *3 (E.D. Va. Dec. 8, 2014) (citing *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 541–42 (4th Cir. 1998)). To prove a breach of the implied covenant of good faith and fair dealing under Virginia law, a plaintiff must establish "(1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009); *Bourdelais v. JP Morgan Chase Bank, N.A.*, No. 3:10cv670-HEH, 2012 WL 5404084, at *4 (E.D. Va. Nov. 5, 2012) ("*Bourdelais II*"). While breach of this duty does not constitute an independent tort, the failure to act in compliance with this duty can support a breach of contract claim. *Charles E. Brauer Co.*, 466 S.E.2d. at 385.

However, in Virginia: "'[W]hen parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights.'" *Covarrubias*, 2014 WL6968035, at *3 (quoting *Ward's Equip., Inc. v. New Holland N. Am.*, 493 S.E.2d 516, 520 (Va. 1997)). The implied covenant of good faith and fair dealing "'cannot be the vehicle for rewriting an unambiguous contract in order to create duties that otherwise do not exist.'" *Id.*

---

[16] Even if the Cagles did have standing, no authority requires that the pages of a substitute trustee document be stapled when signed or notarized. *Wolf*, 512 F. App'x at 343.

(citation omitted). "[A] party does not breach implied duties when it exercises its rights created under the contract." *Washington*, 2011 WL 1871228, at \*9. "[T]he implied covenant of good faith and fair dealing does not create affirmative obligations, but rather is 'simply a manifestation of conditions inherent in expressed promises,' and is designed to prevent a party from 'acting in such a manner as to prevent the other party from performing his [or her] obligations under the contract.'" *Chance v. Wells Fargo Bank, N.A.*, No. 3:12cv320-JRS, 2012 WL 4461495, at \*4 (E.D. Va. Sept. 25, 2012) (quoting *De Vera v. Bank of Am., N.A.*, No. 2:12cv17-RAJ, 2012 WL 2400627, at \*3 (E.D. Va. June 25, 2012)).

### 2. No Breach Exists in This Case Because the Implied Covenant of Good Faith and Fair Dealing Does Not Extend to Loan Modifications

Plaintiffs fail to allege a breach of the implied covenant of good faith and fair dealing because, even reading the factual allegations in favor of the Cagles, CitiMortgage possessed the right to foreclose and sell the Cagles' home. Neither the Note nor the Deed of Trust created a duty on the part of CitiMortgage to delay or cancel the foreclosure sale due to the pendency of the Cagles' HAMP loan modification. The implied covenant does not compel a party to take affirmative actions that the party is not obligated to take under the terms of the contract. *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 182 (4th Cir. 2000). Duties under this covenant do not extend "to the review and processing of loan modifications, absent an express provision indicating otherwise." *Bourdelais II*, 2012 WL 5404084, at \*5 (citing cases); *see also Chance*, 2012 WL 4461495, at \*4; *De Vera*, 2012 WL 2400627, at \*3.

The Cagles essentially attempt to hold CitiMortgage liable for violating HAMP regulations, but courts in this district have consistently dismissed similar HAMP claims that are disguised as a violation of the duty of good faith and fair dealing. *De Vera*, 2012 WL 2400627, at \*3 ("Plaintiff attempts to mask HAMP violations under the guise of an implied covenant of

good faith and fair dealing.  Courts have routinely dismissed similar HAMP claims that are
disguised as a violation of the duty of good faith and fair dealing."); *McInnis*, 2012 WL 383590,
at *9 (same).

### 3.   No Breach Exists in This Case Because CitiMortgage Properly Exercised its Right to Foreclose on the Loan

CitiMortgage did not "breach implied duties when it exercise[d] its rights created under
the contract" to foreclose based upon the Cagles' failure to make mortgage payments.
*Washington*, 2011 WL 1871228, at *9 ("CitiMortgage had the explicit right to foreclose and sell
the Washingtons' home to a third party when the Washingtons failed to make their mortgage
payments."); *see also Covarrubias*, 2014 WL 6968035, at *3.  As in the fraud context, courts
generally have allowed a good faith and fair dealing claim to survive under Rule 12(b)(6) only
when an affirmative representation by the defendant caused the plaintiffs to breach the note and
deed of trust resulting in foreclosure.[17]  The Revised Second Amended Complaint does not
plausibly allege an affirmative inducement by CitiMortgage that caused the Cagles to fail to meet
their mortgage obligation.  As noted above, this case is bereft of allegations that CitiMortgage
attempted to induce the Cagles to default on their mortgage or falsely assured the Cagles that
their home would not be sold at foreclosure.

The Cagles' improper allegations regarding the invalid appointment of a substitute trustee
and a violation of HAMP regulations cannot support a claim for breach of the implied duty of

---

[17] *See Bourdelais II*, 2012 WL 5404084, at *5 ("Bourdelais alleges that Chase's incorrect
representation of the eligibility requirements for the modification induced her to default and
breach her obligation under the Note and Deed of Trust."); *Acuna v. Chase Home Fin., LLC*,
No. 3:10cv905-JRS, 2011 WL 1883089, at *6 (E.D. Va. May 17, 2011) (plaintiff alleges
defendant breached the implied covenant of good faith and fair dealing by:  "(1) inducing him to
default by telling him his chances of receiving a loan modification would increase if he did so;
(2) falsely assuring Acuna about the status of his modification; [and,] (3) falsely assuring Acuna
the home would not be sold at the foreclosure sale.").

good faith and fair dealing as a matter of law.  Accordingly, Count III fails to state a claim for relief.  Amendment would be futile.  As such, this Court will DENY Plaintiff's Motion to Amend Count III regarding the implied covenant of good faith and fair dealing.

### C. Count IV's Claim of a Breach of the UCC Covenant of Good Faith and Fair Dealing is Dismissed as Moot

During oral argument, Plaintiffs abandoned any claim articulated in Count IV of the Revised Second Amended Complaint seeking redress under the UCC's covenant of good faith and fair dealing.  Plaintiffs' position follows clear law, and the law of this case.  First, Plaintiffs acknowledge the numerous cases that have found that the UCC does not govern the transfer of realty.[18]  Second, the district court did not grant leave to amend regarding a UCC claim.[19]

As such, this Court will DENY leave to amend Count IV as MOOT.

### D. The Court Will Not Grant Leave to Amend Again

The instant complaint represents the Cagles' fourth attempt at alleging claims against CitiMortgage.  It contains 74 numbered paragraphs across 75 pages, including over 50 pages of attached exhibits.  Further opportunity to amend would not cure the deficiencies evaluated here.  The Court declines to provide the Cagles with what would be a fifth chance to state claims

---

[18] The UCC does not apply to contracts involving the "creation or transfer of an interest in or lien on real property." Va. Code Ann. § 8.9A-109(d)(11) (West 2015).  Virginia law "'does not recognize an implied covenant of good faith and fair dealing in contracts outside of those governed by the [UCC], and the [UCC] expressly excludes the transfer of realty from its provisions.'" *Bagley v. Wells Fargo Bank, N.A.*, No. 3:12cv617-JRS, 2013 WL 350527, at *6 (E.D. Va. Jan. 29, 2013) (quoting *Harrison v. U.S. Bank Nat'l*, No. 3:12cv00224-JAG, 2012 WL 2366163, at *5–6 (E.D. Va. June 20, 2012)).  "Simply put, *'the Uniform Commercial Code does not apply to foreclosures,'* and therefore, 'no implied covenant of good faith and fair dealing applies in this case.'" *Jones*, 2013 WL 3788428, at *7 (alteration in original) (quoting *Kramer v. Chase Home Fin. L.L.C.*, 83 Va. Cir. 382, 384 (Va. Cir. Ct. 2011)).

[19] The district court's March 13, 2014 Order granted the Cagles leave to amend as to "the claims asserted in Counts I [fraud] and IV [breach of the implied covenant of good faith and fair dealing] and a constructive fraud claim if counsel considers one appropriate." (O. Mar. 13, 2014.)  This Order did not allow any claim of good faith and fair dealing under the UCC.

against CitiMortgage. *See Foman*, 371 U.S. at 182 (district courts should freely allow amendments in the absence of considerations such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment); *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (finding that the district court did not abuse its discretion when it denied plaintiffs' motion to amend the amended complaint where plaintiffs had already set forth four iterations of their complaint and found that plaintiffs' many opportunities to present their claims warranted denial of motion to amend).

"It is clear that the [Cagles] have put their best foot forward, and the Court cannot see how they could possibly plead anything else" in a fifth amended complaint. *Washington*, 2011 WL 1871228, at *5, *14 (granting in part and denying in part motion to dismiss and denying leave to amend as futile when plaintiff's original complaint was 38 pages long and contained 169 numbered paragraphs). As such, this Court DENIES the Motion to Amend and DISMISSES this case with prejudice.

## IV.  Conclusion

For the foregoing reasons, the Court DENIES the Motion to Amend. (ECF No. 30.) An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 5-1-15
Richmond, Virginia